State Court of Fulton County
**E-FILED**
18EV003227
7/9/2018 4:41 PM
LeNora Ponzo, Clerk
Civil Division

# IN THE STATE COURT OF FULTON COUNTY

## STATE OF GEORGIA

| | | |
|---|---|---|
| HUGH GERALD DELAUGHDER, JR. and PATSY ANN WHATLEY, Individually and as Administratrix of the Estate of BILL MONROE WHATLEY, deceased, | : : : : : : | CIVIL ACTION FILE NO.: _____ |
| Plaintiffs, | : : | |
| v. | : : | JURY TRIAL DEMANDED |
| COLONIAL PIPELINE COMPANY and SUPERIOR LAND DESIGNS, LLC, | : : : : | |
| Defendants. | : | |

## COMPLAINT

COME NOW the Plaintiffs, Hugh Gerald Delaughder, Jr. and Patsy Ann Whatley,

Individually and as Administratrix of the Estate of Bill Monroe Whatley, deceased, and file this

Complaint for Damages showing the court as follows:

### PARTIES, JURISDICTION, VENUE and SERVICE

1. Plaintiff Hugh Gerald Delaughder, Jr. (hereinafter "Plaintiff Delaughder") is over the age

of majority and is a resident of Heflin, Alabama.

2. Plaintiff Pasty Ann Whatley is over the age of majority and is a resident of Raleigh,

Mississippi. Plaintiff Whatley brings the present action Individually and as the duly appointed

Administratrix of the Estate of Bill Monroe Whatley, deceased. Prior to his death, Bill Monroe

Whatley (hereinafter the "Decedent") was a resident of Raleigh, Mississippi.

3. Defendant Colonial Pipeline Company (hereinafter "Colonial") is a Delaware corporation

with its principal place of business in Alpharetta, Fulton County, Georgia. Defendant Colonial is

registered to do business in Georgia, and its Alpharetta office is registered as its principal office

**EXHIBIT "B"**

with the Secretary of State. As a result, Defendant Colonial is subject to the jurisdiction of this Court. Defendant Colonial may be served by service of process on its registered agent, Corporation Service Company, 40 Technology Parkway South, Suite 300, Norcross, GA 30092.

4. Defendant Superior Land Designs, LLC (hereinafter "Superior") is a Georgia limited liability company with its principal office in Alpharetta, Fulton County, Georgia. Defendant Superior's Alpharetta office is registered as its principal office with the Secretary of State. As a result of the foregoing, Defendant Superior is subject to the jurisdiction of this Court. Defendant Superior may be served by service of process on its registered agent, Clayton Cain, 20 Grayson New Hope Road, Suite H, Grayson, GA 30017.

5. Venue is proper in this Court and county as to all Defendants pursuant to O.C.G.A. §14-2-510, as the Defendants maintain their registered offices in Fulton County.

## FACTUAL ALLEGATIONS

6. Defendant Colonial owns and operates a multi-state refined petroleum pipeline system which runs from Houston, Texas to Linden, New Jersey (hereinafter "the Pipeline"). Constructed during the 1960's, the Pipeline is over five thousand miles long, and is the largest refined petroleum pipeline in the United States, delivering one hundred million gallons of petroleum products per day.

7. As owner and operator of the Pipeline, at all times Defendant Colonial had ultimate responsibility for its condition, operation, maintenance, and repair, including the excavation work described herein.

8. Defendant Colonial also was responsible for knowing the condition of the Pipeline and its state of repair, and for providing this information to its contractors and agents/servants/employees.

2

9. Defendant Colonial's duties with respect to the condition, operation, maintenance, and repair of the Pipeline are non-delegable.

10. In September of 2016, a leak was discovered on the Pipeline in Shelby County, Alabama (hereinafter the "September Leak"), which resulted in a spill of over three hundred thousand (300,000) gallons of gasoline near the Cahaba River Wildlife Management Area.

11. Following the discovery of the September Leak, the Pipeline and Hazardous Materials Safety Administration ("PHMSA") issued a Corrective Action Order requiring Defendant Colonial to shut down a portion of the Pipeline and take necessary corrective action to protect the public, property, and environment from hazards associated with the leak.  Pursuant to Title 49, § 60112 of the United States Code, PHMSA issued the Corrective Action Order without prior notice or opportunity for a hearing, in part, because of Defendant Colonial's history of problems or failures on the Pipeline, which include one hundred eighty-five (185) "significant incidents" in the ten years preceding the September Leak.

12. The number, frequency, and severity of significant incidents is indicative of systemic failures in the Pipeline and/or Defendant Colonial's management of the Pipeline.

13. The shutdown of the Pipeline had clear national implications, as it caused a significant disruption of the gasoline supply to the Southern and Eastern portions of the United States, and caused a spike in gasoline prices.

14. Following the September Leak and PHMSA's Corrective Action Order, Defendant Colonial was engaged in actions to remediate the leak, which necessitated excavating and accessing segments of the Pipeline and appurtenant equipment and materials which were not located in the immediate vicinity of the site of the September Leak.

3

15. As part of the efforts to remediate the September Leak, Defendant Colonial engaged L.E. Bell Construction, Inc. (hereinafter "L.E. Bell") as an independent contractor to perform excavation and repairs of the Pipeline.  During September and October of 2016, L.E. Bell stationed multiple crews in the Shelby County area to conduct such excavation and repair work.

16. On information and belief, Defendant Colonial had a long history of utilizing the services of L.E. Bell for pipeline exaction and repair work prior to September and October of 2016.

17. Although L.E. Bell was engaged to perform excavation and repair work, Defendant Colonial was responsible for such work, and had a duty to ensure that its Pipeline was safe for excavation, and that excavation work was performed in a safe manner in compliance with federal rules and regulations, industry standards, and Colonial's own procedures.

18. Defendant Colonial assigned one of its agents/servants/employees as its project inspector responsible for the work related to the September Leak performed by L.E. Bell.

19. On October 31, 2016, Plaintiff Delaughder was employed by L.E. Bell as a truck driver, and on that date he was assigned to perform work in Shelby County related to the remediation efforts.

20. On October 31, 2016, the Decedent, Bill Whatley, was employed by L.E. Bell as a laborer, and he was assigned to one of the crews performing excavation and repair work for the remediation efforts in Shelby County, Alabama (hereinafter the "L.E. Bell Crew").

21. Defendant Colonial hired Defendant Superior as an additional, third-party inspector to supervise the excavation and repair work performed by the L.E. Bell Crew on October 31, 2016.

22. As a third-party inspector, Defendant Superior shared Defendant Colonial's duty to ensure excavation and repair work was safe, and that excavation work was performed in a safe manner in compliance with federal rules and regulations, industry standards, and Colonial's own procedures.

4

23. Although Defendant Colonial engaged Defendant Superior regarding the October 31, 2016 excavation and repair work, Defendant Colonial was ultimately responsible for the excavations and repairs, and had a duty to ensure that the excavations were performed in a safe manner in compliance with federal rules and regulations, industry standards, and Colonial's own procedures.

24. Defendant Colonial also had a duty to ensure that Defendant Superior's inspector was experienced and properly qualified.

25. Defendant Superior assigned its agent/servant/employee, Chris Covey, to inspect at the site of the L.E. Bell Crew's excavations, and he was responsible for directing excavation activities and had a duty to stop work if the excavations were not safe or if any unsafe practices occurred.

26. While working as an inspector at the site of the L.E. Bell Crew's excavations, Mr. Covey was also an agent/servant/employee of Defendant Colonial.

27. Defendant Superior's inspector, Mr. Covey, lacked sufficient experience and qualifications.

28. On the morning of October 31, 2016, the L.E. Bell Crew to which the Decedent was assigned performed an excavation of the Pipeline along County Road 91 in Shelby County, Alabama (hereinafter the "County Road 91 Excavation"). During the County Road 91 Excavation, Defendant Colonial's project inspector, Nicky Cobb, was on site. In addition, Defendant Superior's inspector, Mr. Covey, was present as the third-party inspector.

29. On the morning of October 31, 2016, Plaintiff Delaughder transported L.E. Bell equipment from Shelby County to Heflin, Alabama. On returning to Shelby County, Plaintiff Delaughder was instructed by his supervisor to transport equipment to the L.E. Bell Crew at the site of the County Road 91 Excavation.

30. After work for the County Road 91 Excavation was completed, the L.E. Bell Crew, including the Decedent, drove to the sight of site of a second excavation to be performed that day along River Road in Shelby County, Alabama (hereinafter the "Subject Excavation"). Plaintiff Delaughder transported equipment from the County Road 91 Excavation site to the Subject Excavation.

31. Defendant Superior's inspector, Mr. Covey, went to the site of the Subject Excavation; however, Colonial's project inspector, Mr. Cobb, failed to appear. Mr. Cobb instructed Mr. Covey that the Subject Excavation should go forward without him present. Mr. Covey had requested documentation from Mr. Cobb regarding the location of the Pipeline at the excavation sites, but the information was not provided to Mr. Covey.

32. The Subject Excavation, as planned, was intended to be an excavation to uncover one or more threaded O-rings (hereinafter "TORs").

33. TORs are appurtenances installed on pipelines which permit access to the pipe interior. While TORs are buried below ground along with the pipelines, they extend several inches above the surface of the pipelines themselves.

34. At the Subject Excavation, an L.E. Bell employee (hereinafter the "Operator") was assigned to operate a large "track hoe" excavator, which had been delivered to the site by Plaintiff Delaughder.

35. Under Mr. Covey's direction, and pursuant to the custom and course of conduct between Defendant Colonial and L.E. Bell, the Operator began digging with the "track hoe" above or near the location of the TORs on the Pipeline.

6

36. As the Operator was digging, the "track hoe" excavator struck either the Pipeline, one of the TORs, or a concrete pad installed over one of the TORs. As a result, the Pipeline ruptured, and a large spray of gasoline was released.

37. The L.E. Bell Crew and Mr. Covey attempted to flee the site, but the gasoline ignited and a large explosion occurred (hereinafter the "Subject Explosion").

38. The Subject Explosion burned for several days, and received national media attention. As a result of the Subject Explosion, over one hundred seventy thousand gallons of gasoline were released, two workers were killed, and four others were injured.

39. The Decedent and Plaintiff Delaughder were seriously injured and burned in the Subject Explosion.

40. Ultimately, the Decedent lost his life on November 21, 2016 as a result of the injuries he sustained in Subject Explosion.

## STATEMENT REGARDING APPLICABLE LAW

41. Plaintiffs hereby incorporate by reference all preceding allegations as if fully set forth herein.

42. The subject explosion which injured Plaintiff Delaughder and caused the death of the Decedent occurred in Shelby County, Alabama.

43. Pursuant to the rule of *lex loci delicti*, the substantive law of Alabama applies to Plaintiff's claims in tort.

44. Pursuant to O.C.G.A. § 9-11-43, Plaintiffs hereby give notice of their intent to seek the application of Alabama substantive law to the claims set forth below for negligence, wantonness, negligence per se, respondeat superior, wrongful death, loss of consortium, and punitive damages.

## COUNT I

7

## NEGLIGENCE AGAINST COLONIAL PIPELINE COMPANY

45. Plaintiffs hereby incorporate by reference all preceding allegations as if fully set forth herein.

46. Defendant Colonial breached a duty of care to Plaintiff Delaughder and the Decedent in multiple respects, including but not limited to: (1) failing to adopt and/or enforce adequate procedures, including but not limited to procedures for the safe excavation and repair of its Pipeline; (2) failing to have and maintain adequate information and records regarding the Pipeline and appurtenant equipment and material, and failing to provide adequate information and records to its contractors necessary for a safe excavation and repair of its Pipeline; (3) failing to warn regarding hazardous conditions of the Pipeline and appurtenant equipment and material; (4) failing to properly design, construct, mark, and/or install the Pipeline and appurtenant equipment and materials, and failing to ensure the proper design, construction, and/or installation of the same; (5) failing to properly inspect, monitor, assess, evaluate, and/or maintain the Pipeline, its integrity, the surrounding area, and appurtenant equipment and materials, and failing to ensure the proper inspection, monitoring, assessment, evaluation, and/or maintenance of the same; (6) failing to identify and/or correct hazardous conditions in the Pipeline, its integrity, the surrounding area, and appurtenant equipment and materials; (7) failing to provide adequate personnel, supervision and oversight of individuals and/or entities it utilized in the inspection, repair, excavation and/or maintenance of the Pipeline, its integrity, the surrounding area, and appurtenant equipment and materials; (8) failing to operate its Pipeline in a safe manner and in a safe condition; (9) failing to install, failing to maintain, or removing safety devices and systems which protected the Pipeline, its integrity, the surrounding area, and appurtenant equipment and materials; (10) failing to properly assess, hire, train, and/or supervise its agents/servants/employees; (11) failing to have in

8

place an appropriate emergency plan or procedures; (12) failing to have a competent inspector present, and permitting an unqualified individual to supervise and direct the excavation of the Pipeline and appurtenant equipment and materials; (13) failing to have in place plans and procedures specific to the Subject Excavation; (14) failing to adequately locate and mark the location of TORs and appurtenances, including concrete pads installed over TORS, on the Pipeline; (15) selecting and retaining contractors who were not competent and did not have adequate training, qualifications, and experience, and whose agents/servants/employees were not competent and did not have adequate training, qualifications, and experience; (16) selecting and retaining contractors who utilized unsafe work practices and/or failed to adhere to federal rules and regulations, industry standards, and Colonial's own policies; (17) failing to stop unsafe work practices; (18) directly or indirectly instructing its contractors and/or their employees to perform actions and work practices that were not safe and were in violation of federal rules and regulations, industry standards, and Colonial's own policies; (19) fostering a culture whereby unsafe practices were not reported or stopped, and were allowed to proceed in order to expedite work; (20) failing to ensure that all workers at the Subject Excavation had adequate training, qualifications, and experience; and (21) allowing the Subject Excavation to proceed without adequate and/or necessary information, including the depth and location of the Pipeline and appurtenant equipment and material.

47. Defendant Colonial's failure to comply with its duties constitutes negligence.

48. Defendant Colonial's breaches of duty combined and concurred with other wrongful conduct to proximately cause Plaintiff Delaughder's injuries and the injuries and death of the Decedent, Bill Monroe Whatley.

## COUNT II
## WANTONNESS AGAINST COLONIAL PIPELINE COMPANY

49. Plaintiffs hereby incorporate by reference all preceding allegations as if fully set forth herein.

50. Prior to the subject explosion on October 31, 2016, Defendant Colonial had superior knowledge of the dangers, defects, hazards and/or risks associated with its Pipeline and appurtenant equipment and materials.

51. Prior to the subject explosion on October 31, 2016, Defendant Colonial: (1) received notice of numerous incidents where excavation crews of its contractors had struck its Pipeline; (2) knew that its contractors employed individuals who were not competent and did not have adequate training, qualifications, or experience; (3) knew that excavation crews of its contractors were utilizing unsafe work practices, including but not limited to failure to adhere to federal rules and regulations, industry standards, and Colonial's own policies; and (4) fostered a culture whereby unsafe practices were not reported or stopped, and were allowed to proceed in order to expedite work.

52. Prior to the subject explosion on October 31, 2016, Defendant Colonial knew explosions like the subject explosion which injured Plaintiffs would likely occur if its Pipeline was struck, or if excavation crews utilized unsafe work practices, including but not limited to failure to adhere to federal rules and regulations, industry standards, and Colonial's own policies.

53. Defendant Colonial, despite this knowledge, consciously and recklessly disregarded the rights and safety of others, including Plaintiff Delaughder and the Decedent, through its actions and inactions, including but not limited to: (1) failing to adopt and/or enforce adequate procedures, including but not limited to procedures for the safe excavation and repair of its Pipeline; (2) failing to have and maintain adequate information and records regarding the Pipeline and appurtenant equipment and material, and failing to provide adequate information and records to its contractors

10

necessary for a safe excavation and repair of its Pipeline; (3) failing to warn regarding hazardous conditions of the Pipeline and appurtenant equipment and material; (4) failing to properly design, construct, mark, and/or install the Pipeline and appurtenant equipment and materials, and failing to ensure the proper design, construction, and/or installation of the same; (5) failing to properly inspect, monitor, assess, evaluate, and/or maintain the Pipeline, its integrity, the surrounding area, and appurtenant equipment and materials, and failing to ensure the proper inspection, monitoring, assessment, evaluation, and/or maintenance of the same; (6) failing to identify and/or correct hazardous conditions in the Pipeline, its integrity, the surrounding area, and appurtenant equipment and materials; (7) failing to provide adequate personnel, supervision and oversight of individuals and/or entities it utilized in the inspection, repair, excavation and/or maintenance of the Pipeline, its integrity, the surrounding area, and appurtenant equipment and materials; (8) failing to operate its Pipeline in a safe manner and in a safe condition; (9) failing to install, failing to maintain, or removing safety devices and systems which protected the Pipeline, its integrity, the surrounding area, and appurtenant equipment and materials; (10) failing to properly assess, hire, train, and/or supervise its agents/servants/employees; (11) failing to have in place an appropriate emergency plan or procedures; (12) failing to have a competent inspector present, and permitting an unqualified individual to supervise and direct the excavation of the Pipeline and appurtenant equipment and materials; (13) failing to have in place plans and procedures specific to the Subject Excavation; (14) failing to adequately locate and mark the location of TORs and appurtenances, including concrete pads installed over TORS, on the Pipeline; (15) selecting and retaining contractors who were not competent and did not have adequate training, qualifications, and experience, and whose agents/servants/employees were not competent and did not have adequate training, qualifications, and experience; (16) selecting and retaining contractors who utilized

11

unsafe work practices and/or failed to adhere to federal rules and regulations, industry standards, and Colonial's own policies; (17) failing to stop unsafe work practices; (18) directly or indirectly instructing its contractors and/or their employees to perform actions and work practices that were not safe and were in violation of federal rules and regulations, industry standards, and Colonial's own policies; (19) fostering a culture whereby unsafe practices were not reported or stopped, and were allowed to proceed in order to expedite work; (20) failing to ensure that all workers at the Subject Excavation had adequate training, qualifications, and experience; and (21) allowing the Subject Excavation to proceed without adequate and/or necessary information, including the depth and location of the Pipeline and appurtenant equipment and material.

54. Defendant Colonial's wanton conduct combined and concurred with other wrongful conduct to proximately cause Plaintiff Delaughder's injuries and the injuries and death of the Decedent, Bill Monroe Whatley.

## COUNT III
## NEGLIGENCE PER SE AGAINST COLONIAL PIPELINE COMPANY

55. Plaintiffs hereby incorporate by reference all preceding allegations as if fully set forth herein.

56. Defendant Colonial's negligent and wanton conduct described herein also breached a duty of care to Plaintiff Delaughder and the Decedent by violation of local, state, and national laws, regulations, ordinances, fire codes, industry standards, and/or safety codes, as well as Defendant Colonial's own policies and procedures, which have the force and effect of law.

57. Plaintiff Delaughder and the Decedent were within the class of persons intended to be protected by said laws, regulations, ordinances, industry standards and/or safety codes, and is among the class of persons to whom such duty ran, and their injuries are the type of harm intended to be prevented by such laws, regulations, ordinances, industry standards and/or safety codes.

58. The negligent and wanton breach of duty by Defendant Colonial constitutes negligence per se.

59. The negligent and wanton breach of duty by Defendant Colonial combined and concurred with other wrongful conduct to proximately cause Plaintiff Delaughder's injuries and the injuries and death of the Decedent, Bill Monroe Whatley.

**COUNT IV**
**NEGLIGENCE AGAINST SUPERIOR LAND DESIGNS**

60. Plaintiffs hereby incorporate by reference all preceding allegations as if fully set forth herein.

61. Defendant Superior breached a duty of care to Plaintiff Delaughder and the Decedent in multiple respects, including but not limited to: (1) failing to have in place an appropriate emergency plan or procedures; (2) failing to adopt and/or enforce adequate procedures, including but not limited to procedures for the safe excavation and repair of the Pipeline promulgated by local, state, and national laws, regulations, ordinances, fire codes, industry standards, and/or safety codes, as well as Defendant Colonial's policies and procedures, which have the force and effect of law; (3) failing to provide adequate oversight necessary for a safe excavation and repair of the Pipeline; (4) authorizing, directing and permitting unsafe actions and work practices in the excavation of the Pipeline and appurtenant equipment and material; (5) failing to stop the Subject Excavation when it became unsafe, including the use of unsafe actions and work practices in the excavation of the Pipeline and appurtenant equipment and material; (6) failing to properly hire, train, and/or supervise its agents/servants/employees; (7) failing to have in place plans and procedures specific to the Subject Excavation; (8) failing to conduct an appropriate job safety analysis for the Subject Excavation; (9) assigning an agent/servant/employee as inspector for the Subject Excavation who was not competent, adequately trained, qualified, or experienced; (10)

directing and/or permitting the performance of actions and work practices that were not safe and were in violation of federal rules and regulations, industry standards, and Colonial's own policies; (11) failing to ensure that all working at the Subject excavation had adequate training, qualifications, and experience; (12) failing to adequately hire, train, and/or supervise its agents, servants, and employees; and (13) allowing the Subject Excavation to proceed without adequate and/or necessary information, including the depth and location of the Pipeline and appurtenant equipment and material.

62. Defendant Superior's failure to comply with its duties constitutes negligence.

63. Defendant Superior's breaches of its duties combined and concurred with other wrongful conduct to proximately cause Plaintiff Delaughder's injuries and the injuries and death of the Decedent, Bill Monroe Whatley.

**COUNT V**
**WANTONNESS AGAINST SUPERIOR LAND DESIGNS**

64. Plaintiffs hereby incorporate by reference all preceding allegations as if fully set forth herein.

65. Prior to the subject explosion on October 31, 2016, Defendant Superior had superior knowledge of the dangers, hazards and/or risks associated with the subject Pipeline and appurtenant equipment and materials.

66. Prior to the subject explosion on October 31, 2016, Defendant Superior: (1) received notice of numerous incidents where excavation crews had struck the Pipeline; (2) knew that excavation crews were utilizing unsafe work practices; (3) knew that its agent/servant/employee, Chris Covey, was not competent and lacked proper qualifications, training and experience to serve as an inspector for the Subject Excavation.

67. Prior to the subject explosion on October 31, 2016, Defendant Superior knew explosions like the subject explosion which injured Plaintiffs could occur.

68. Defendant Superior, despite this knowledge, consciously and recklessly disregarded the rights and safety of others, including Plaintiff Delaughder and the Decedent, through its actions and inactions, including but not limited to: (1) failing to have in place an appropriate emergency plan or procedures; (2) failing to adopt and/or enforce adequate procedures, including but not limited to procedures for the safe excavation and repair of the Pipeline promulgated by local, state, and national laws, regulations, ordinances, fire codes, industry standards, and/or safety codes, as well as Defendant Colonial's policies and procedures, which have the force and effect of law; (3) failing to provide adequate oversight necessary for a safe excavation and repair of the Pipeline; (4) authorizing, directing and permitting unsafe actions and work practices in the excavation of the Pipeline and appurtenant equipment and material; (5) failing to stop the Subject Excavation when it became unsafe, including the use of unsafe actions and work practices in the excavation of the Pipeline and appurtenant equipment and material; (6) failing to properly hire, train, and/or supervise its agents/servants/employees; (7) failing to have in place plans and procedures specific to the Subject Excavation; (8) failing to conduct an appropriate job safety analysis for the Subject Excavation; (9) assigning an agent/servant/employee as inspector for the Subject Excavation who was not competent, adequately trained, qualified, or experienced; (10) directing and/or permitting the performance of actions and work practices that were not safe and were in violation of federal rules and regulations, industry standards, and Colonial's own policies; (11) failing to ensure that all working at the Subject excavation had adequate training, qualifications, and experience; (12) failing to adequately hire, train, and/or supervise its agents, servants, and employees; and (13)

allowing the Subject Excavation to proceed without adequate and/or necessary information, including the depth and location of the Pipeline and appurtenant equipment and material.

69. Defendant Superior's wanton conduct combined and concurred with other wrongful conduct to proximately cause Plaintiff Delaughder's injuries and the injuries and death of the Decedent, Bill Monroe Whatley.

## COUNT VI
## NEGLIGENCE PER SE AGAINST DEFENDANT SUPERIOR

70. Plaintiffs hereby incorporate by reference all preceding allegations as if fully set forth herein.

71. Defendant Superior's negligent and wanton conduct described herein also breached a duty of care to Plaintiff Delaughder and the Decedent by violation of local, state, and national laws, regulations, ordinances, fire codes, industry standards, and/or safety codes, as well as Defendant Colonial's policies and procedures, which have the force and effect of law.

72. Plaintiff Delaughder and the Decedent were within the class of persons intended to be protected by said laws, regulations, ordinances, industry standards and/or safety codes, and is among the class of persons to whom such duty ran, and their injuries are the type of harm intended to be prevented by such laws, regulations, ordinances, industry standards and/or safety codes.

73. The negligent and wanton breach of duty by Defendant Superior constitutes negligence per se.

74. The negligent and wanton breach of duty by Defendant Superior combined and concurred with other wrongful conduct to proximately cause Plaintiff Delaughder's injuries and the injuries and death of the Decedent, Bill Monroe Whatley.

## COUNT VII
## RESPONDEAT SUPERIOR

16

75. Plaintiffs hereby incorporate by reference all preceding allegations as if fully set forth herein.

76. In committing the negligent and wanton conduct described hereinabove, Defendant Colonial and Defendant Superior acted through agents/servants/employees who were acting within the course and scope of their agency or employment.

77. Defendant Colonial and Defendant Superior are responsible for the tortious conduct of their agents, servants, and employees under the doctrine of respondeat superior.

**COUNT VIII**
**PLAINTIFF WHATLEY'S WRONGFUL DEATH AGAINST ALL DEFENDANTS**

78. Plaintiff Patsy Ann Whatley hereby incorporates by reference all preceding allegations as if fully set forth herein.

79. The tortious conduct of Defendant Colonial and Defendant Superior described hereinabove combined and concurred to proximately cause the wrongful death of the Decedent, Bill Whatley.

80. Plaintiff Patsy Ann Whatley, as Administratrix of the Estate of Bill Monroe Whatley, deceased, files this claim for wrongful death pursuant to Alabama Code § 6-5-410.

81. Pursuant to the Alabama Wrongful Death Act, Alabama Code § 6-5-410, Plaintiff seeks punitive damages in an amount to be determined by a jury.

**COUNT IX**
**PLAINTIFF DELAUGHDER'S CLAIM FOR PUNITIVE DAMAGES**
**AGAINST ALL DEFENDANTS**

82. Plaintiffs hereby incorporate by reference all preceding allegations as if fully set forth herein.

83. In committing the negligent and wanton conduct described hereinabove, the Defendants consciously and/or deliberately engaged in oppression, wantonness, and/or malice with regard to Plaintiff Delaughder.

84. With respect to the tortious and wanton conduct of their employees, agents, and servants, the Defendants: (1) knew, or should have known, of the unfitness of said employees, agents, and servants; and, with a disregard for the rights and safety of others, continued to use the services of the employees, agents, and servants, and/or used said services without proper instruction; (2) authorized the wrongful conduct of the employees, agents, and servants; and/or (3) ratified the wrongful conduct.

85. The tortious and wanton acts of the Defendants' employees, agents, and servants were calculated to benefit the Defendants.

86. Accordingly, Plaintiff Delaughder seeks punitive damages in an amount to be determined by a jury.

**COUNT X**
**PLAINTIFF WHATLEY'S LOSS OF CONSORTIUM CLAIM**
**AGAINST ALL DEFENDANTS**

87. Plaintiffs hereby incorporate by reference all preceding allegations as if fully set forth herein.

88. As a result of the Decedent's death, Plaintiff Patsy Ann Whatley, as the surviving spouse, has experienced a loss of love, companionship, fellowship, cooperation, assistance, society, services, conversation, care, affection, emotional support, and physical aid and comfort, as well as her right to continuation of the normal marital relationship.

89. The acts of the Defendants combined and concurred to proximately cause Plaintiff Patsy Ann Whatley's loss of marital services.

## COUNT XI
## ATTORNEY'S FEES AND EXPENSES OF LITIGATION

90. Plaintiffs hereby incorporate by reference all preceding allegations as if fully set forth herein.

91. There exists no bona fide dispute as to the Defendants' liability, and said Defendants have caused Plaintiffs unnecessary trouble and expense in forcing them to file and prosecute this lawsuit to recover damages.   Accordingly, Plaintiffs are authorized to recover expenses of litigation, including reasonable attorney's fees, from the Defendants pursuant to O.C.G.A. § 13-6-11.

### PLAINTIFF DELAUGHDER'S PRAYER FOR RELIEF

WHEREFORE, Plaintiff Delaughder respectfully requests the following:

    a)  that a copy of the Summons and Complaint be served upon the Defendants;

    b)  a trial by jury as to each and every appropriate issue;

    c)  a judgment against the Defendants;

    d)  an award of compensatory damages to be determined by a jury;

    e)  an award of punitive damages to be determined by a jury;

    f)  reasonable attorney's fees and expenses of litigation;

    g)  special damages in an amount to be determined later;

    h)  that all costs of this action be cast against the Defendants; and

    i)  any and all such other and further relief as the Court may deem just and appropriate.

### PLAINTIFF WHATLEY'S PRAYER FOR RELIEF

WHEREFORE, Plaintiff Patsy Ann Whatley, Individually and as Administratrix of the Estate of

Bill Monroe Whatley, deceased, respectfully requests the following:

a) that a copy of the Summons and Complaint be served upon the Defendants;

b) a trial by jury as to each and every appropriate issue;

c) a judgment against the Defendants;

d) an award of compensatory damages to be determined by a jury;

e) an award of punitive damages to be determined by a jury;

f) an award of punitive damages, pursuant to Ala. Code § 6-5-410, to be determined by a
jury;

g) reasonable attorney's fees and expenses of litigation;

h) special damages in an amount to be determined later;

i) that all costs of this action be cast against the Defendants; and

j) any and all such other and further relief as the Court may deem just and appropriate.


This 9th day of July, 2018.

Respectfully submitted,

By: /s/ Travis E. Lynch
Travis E. Lynch, GA Bar No. 162373
tlynch@hgdlawfirm.com
HENINGER GARRISON DAVIS, LLC
3621 Vinings Slope, Suite 4320
Atlanta, GA 30339
Tel: 404-996-0867
Fax: 205-326-3332


/S/ GLENDA G. COCHRAN
Glenda G. Cochran, PHV forthcoming
GC@GLENDACOCHRAN.COM
Matthew Robert Moneyham, PHV forthcoming

MM@glendacochran.com
GLENDA COCHRAN ASSOCIATES
310 Richard Arrington Jr. Blvd. North,
Suite 500
Birmingham, Alabama 35203
Telephone: (205) 328-5050
Facsimile:   (205) 320-1659

**ATTORNEYS FOR PLAINTIFFS**

**GEORGIA, FULTON COUNTY**

State Court of Fulton County
**E-FILED**
18EV003227
7/9/2018 4:41 PM
LeNora Ponzo, Clerk
Civil Division

DO NOT WRITE IN THIS SPACE

**STATE COURT OF FULTON COUNTY**
**Civil Division**

**CIVIL ACTION FILE #:** _____

Patsy Ann Whatley 2829 SCR 121  Raleigh, MS 39153

Hugh Gerald Delaughder, Jr. 5678 Co  Rd. 13 Heflin, AL 36264

_____

Plaintiff's Name, Address, City, State, Zip Code

**VS.**

Colonial Pipeline Company c/o Corporation Service Company

40 Technology Parkway South, Suite 300

Norcross, GA 30092

_____

Defendant's Name, Address, City, State, Zip Code

| TYPE OF SUIT | AMOUNT OF SUIT |
|---|---|
| [  ] ACCOUNT | PRINCIPAL $ TBD |
| [  ] CONTRACT |  |
| [  ] NOTE | INTEREST $ TBD |
| [  ] TORT |  |
| [  ] PERSONAL INJURY | ATTY. FEES $ TBD |
| [  ] FOREIGN JUDGMENT |  |
| [  ] TROVER | COURT COST $ TBD |
| [  ] SPECIAL LIEN |  |
|  | ************ |
| [  ] NEW FILING |  |
| [  ] RE-FILING: PREVIOUS CASE NO. _____ |  |

**SUMMONS**

TO THE ABOVE NAMED-DEFENDANT:

You are hereby required to file with the Clerk of said court and to serve a copy on the Plaintiff's Attorney, or on Plaintiff if no Attorney. to-wit:

Name:  Travis Lynch, Esq.

Address:  3621 Vinings Slope, Suite 4320

City, State, Zip Code: Atlanta, GA 30339                    Phone No.: 404-996-0867

An answer to this complaint, which is herewith served on you, should be filed within thirty (30) days after service, not counting the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint, plus cost of this action. **DEFENSE MAY BE MADE & JURY TRIAL DEMANDED**, via electronic filing through E-file GA or, if desired, at the e-filing public access terminal in the Self-Help Center at 185 Central Ave., S.W. Ground Floor, Room TG300, Atlanta, GA 30303.

**7/9/2018 4:41 PM**

LeNora Ponzo, Interim Chief Clerk (electronic signature)

If the sum claimed in the suit, or value of the property sued for, is $300.00 or more Principal, the defendant must admit or deny the paragraphs of plaintiff's petition by making written Answer. Such paragraphs undenied will be taken as true. If the plaintiff's petition is sworn to, or if suit is based on an unconditional contract in writing, then the defendant's answer must be sworn to.

If the principal sum claimed in the suit, or value of the property sued for, is less than $300.00, and is on a note, unconditional contract, account sworn to, or the petition sworn to, defense must be made by filing a sworn answer setting up the facts relied on as a defense.

**SERVICE INFORMATION:**

Served, this _____ day of _____, 20____.

_____
DEPUTY MARSHAL, STATE COURT OF FULTON COUNTY

WRITE VERDICT HERE:
We, the jury, find for _____

_____

This _____ day of _____, 20____.    _____ Foreperson

**(STAPLE TO FRONT OF COMPLAINT)**

State Court of Fulton County
**E-FILED**
18EV003227
7/9/2018 4:41 PM
LeNora Ponzo, Clerk
Civil Division

**GEORGIA, FULTON COUNTY**

DO NOT WRITE IN THIS SPACE

**STATE COURT OF FULTON COUNTY**
**Civil Division**

CIVIL ACTION FILE #: _____

Patsy Ann Whatley 2829 SCR 121  Raleigh, MS 39153

Hugh Gerald Delaughder, Jr. 5678 Co. Rd. 13 Heflin, AL 36264

_____

Plaintiff's Name, Address, City, State, Zip Code

vs.

Colonial Pipeline Company c/o Corporation Service Company

40 Technology Parkway South, Suite 300

Norcross, GA 30092

Defendant's Name, Address, City, State, Zip Code

| TYPE OF SUIT | AMOUNT OF SUIT |
|---|---|
| [ ] ACCOUNT | PRINCIPAL $ TBD |
| [ ] CONTRACT | |
| [ ] NOTE | INTEREST $ TBD |
| [ ] TORT | |
| [ ] PERSONAL INJURY | ATTY. FEES $ TBD |
| [ ] FOREIGN JUDGMENT | |
| [ ] TROVER | COURT COST $ TBD |
| [ ] SPECIAL LIEN | |
| | ************ |
| [ ] NEW FILING | |
| [ ] RE-FILING: PREVIOUS CASE NO. _____ | |

## SUMMONS

TO THE ABOVE NAMED-DEFENDANT:

You are hereby required to file with the Clerk of said court and to serve a copy on the Plaintiff's Attorney, or on Plaintiff if no Attorney, to-wit:

Name: Travis Lynch, Esq.

Address: 3621 Vinings Slope, Suite 4320

City, State, Zip Code: Atlanta, GA 30339          Phone No.: 404-996-0867

An answer to this complaint, which is herewith served on you, should be filed within thirty (30) days after service, not counting the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint, plus cost of this action. **DEFENSE MAY BE MADE & JURY TRIAL DEMANDED**, via electronic filing through E-file GA or, if desired, at the e-filing public access terminal in the Self-Help Center at 185 Central Ave., S.W., Ground Floor, Room TG300, Atlanta, GA 30303.

**7/9/2018 4:41 PM**

LeNora Ponzo, Interim Chief Clerk (electronic signature)

If the sum claimed in the suit, or value of the property sued for, is $300.00 or more Principal, the defendant must admit or deny the paragraphs of plaintiff's petition by making written Answer. Such paragraphs undenied will be taken as true. If the plaintiff's petition is sworn to, or if suit is based on an unconditional contract in writing, then the defendant's answer must be sworn to.

If the principal sum claimed in the suit, or value of the property sued for, is less than $300.00, and is on a note, unconditional contract, account sworn to, or the petition sworn to, defense must be made by filing a sworn answer setting up the facts relied on as a defense.

### SERVICE INFORMATION:

Served, this _____ day of _____, 20_____.

_____
DEPUTY MARSHAL, STATE COURT OF FULTON COUNTY

### WRITE VERDICT HERE:

We, the jury, find for _____

_____

This _____ day of _____, 20_____.    _____ Foreperson

**(STAPLE TO FRONT OF COMPLAINT)**

State Court of Fulton County
**E-FILED**
18EV003227
7/9/2018 4:41 PM
LeNora Ponzo, Clerk
Civil Division

## IN THE STATE COURT OF FULTON COUNTY

## STATE OF GEORGIA

| | | |
|---|---|---|
| **HUGH GERALD DELAUGHDER, JR.** | : | |
| **and PATSY ANN WHATLEY,** | : | |
| **Individually and as Administratrix of the** | : | **CIVIL ACTION FILE** |
| **Estate of BILL MONROE WHATLEY,** | : | **NO.:** _____ |
| **deceased,** | : | |
| | : | |
| **Plaintiffs,** | : | |
| | : | |
| **v.** | : | **JURY TRIAL DEMANDED** |
| | : | |
| **COLONIAL PIPELINE COMPANY and** | : | |
| **SUPERIOR LAND DESIGNS, INC.,** | : | |
| | : | |
| **Defendants.** | | |

## PLAINTIFFS' FIRST REQUEST TO ADMIT TO
## DEFENDANT, COLONIAL PIPELINE COMPANY

COME NOW the Plaintiffs, though their undersigned counsel of record, and, pursuant to

O.C.G.A. § 9-11-36, hereby requests that the Defendant, COLONIAL PIPELINE COMPANY

(hereinafter referred to as "Defendant," "Colonial," or "you,") admit or deny that each of the

statements set forth below is true, and serve a copy of the answers upon the undersigned counsel

of record within the time limits set forth in O.C.G.A. § 9-11-36.

## REQUESTS

RFA 1:     Admit that service of process was proper on COLONIAL PIPELINE

COMPANY.

RFA 2:     Admit that there is no defect in the process issued in this case.

RFA 3:     Admit that venue is proper in this vase as to COLONIAL PIPELINE

COMPANY.

1

RFA 4:      Admit that jurisdiction is proper in this case as to COLONIAL PIPELINE

            COMPANY.

RFA 5:      Admit that you are a proper party to this action.

RFA 6:      Admit that all principals, agents, or employees of Defendant COLONIAL

            PIPELINE COMPANY, including but not limited to Nikki Cobb, were acting

            within the course and scope of their employment with Defendant COLONIAL

            PIPELINE COMPANY on October 31, 2016 at the time of the explosion which is

            the subject of this litigation.

      This 9th day of July, 2018.

                                    Respectfully submitted,

                                    By: /s/ Travis E. Lynch
                                    Travis E. Lynch, GA Bar No. 162373
                                    tlynch@hgdlawfirm.com
                                    James F. McDonough, III., GA Bar No. 117088
                                    jmcdonough@hgdlawfirm.com
                                    HENINGER GARRISON DAVIS, LLC
                                    3621 Vinings Slope, Suite 4320
                                    Atlanta, GA 30339
                                    Tel: 404-996-0867; -0869
                                    Fax: 205-326-3332


                                    /S/ GLENDA G. COCHRAN
                                    Glenda G. Cochran, PHV forthcoming
                                    GC@GLENDACOCHRAN.COM
                                    Matthew Robert Moneyham, PHV forthcoming
                                    MM@glendacochran.com
                                    GLENDA COCHRAN ASSOCIATES
                                    310 Richard Arrington Jr. Blvd. North,
                                    Suite 500
                                    Birmingham, Alabama 35203
                                    Telephone: (205) 328-5050
                                    Facsimile:   (205) 320-1659

                                    **ATTORNEYS FOR PLAINTIFFS**

                                            2

State Court of Fulton County
**E-FILED**
18EV003227
7/9/2018 4:41 PM
LeNora Ponzo, Clerk
Civil Division

## IN THE STATE COURT OF FULTON COUNTY

## STATE OF GEORGIA

| | | |
|---|---|---|
| HUGH GERALD DELAUGHDER, JR. and PATSY ANN WHATLEY, Individually and as Administratrix of the Estate of BILL MONROE WHATLEY, deceased, | : : : : : | CIVIL ACTION FILE NO.: _____ |
| Plaintiffs, | : : | |
| v. | : : | JURY TRIAL DEMANDED |
| COLONIAL PIPELINE COMPANY and SUPERIOR LAND DESIGNS, INC., | : : : | |
| Defendants. | : | |

### PLAINTIFFS' FIRST REQUEST TO ADMIT TO DEFENDANT, COLONIAL PIPELINE COMPANY

COME NOW the Plaintiffs, though their undersigned counsel of record, and, pursuant to O.C.G.A. § 9-11-36, hereby requests that the Defendant, COLONIAL PIPELINE COMPANY (hereinafter referred to as "Defendant," "Colonial," or "you,") admit or deny that each of the statements set forth below is true, and serve a copy of the answers upon the undersigned counsel of record within the time limits set forth in O.C.G.A. § 9-11-36.

### REQUESTS

RFA 1:     Admit that service of process was proper on COLONIAL PIPELINE COMPANY.

RFA 2:     Admit that there is no defect in the process issued in this case.

RFA 3:     Admit that venue is proper in this vase as to COLONIAL PIPELINE COMPANY.

1

RFA 4:      Admit that jurisdiction is proper in this case as to COLONIAL PIPELINE

            COMPANY.

RFA 5:      Admit that you are a proper party to this action.

RFA 6:      Admit that all principals, agents, or employees of Defendant COLONIAL

            PIPELINE COMPANY, including but not limited to Nikki Cobb, were acting

            within the course and scope of their employment with Defendant COLONIAL

            PIPELINE COMPANY on October 31, 2016 at the time of the explosion which is

            the subject of this litigation.

      This 9th day of July, 2018.

                                          Respectfully submitted,

                                          By: /s/ Travis E. Lynch
                                          Travis E. Lynch, GA Bar No. 162373
                                          tlynch@hgdlawfirm.com
                                          James F. McDonough, III., GA Bar No. 117088
                                          jmcdonough@hgdlawfirm.com
                                          HENINGER GARRISON DAVIS, LLC
                                          3621 Vinings Slope, Suite 4320
                                          Atlanta, GA 30339
                                          Tel: 404-996-0867; -0869
                                          Fax: 205-326-3332


                                          /S/ GLENDA G. COCHRAN
                                          Glenda G. Cochran, PHV forthcoming
                                          GC@GLENDACOCHRAN.COM
                                          Matthew Robert Moneyham, PHV forthcoming
                                          MM@glendacochran.com
                                          GLENDA COCHRAN ASSOCIATES
                                          310 Richard Arrington Jr. Blvd. North,
                                          Suite 500
                                          Birmingham, Alabama 35203
                                          Telephone: (205) 328-5050
                                          Facsimile:   (205) 320-1659

                                          **ATTORNEYS FOR PLAINTIFFS**

2

State Court of Fulton County
**E-FILED**
18EV003227
7/9/2018 4:41 PM
LeNora Ponzo, Clerk
Civil Division

## IN THE STATE COURT OF FULTON COUNTY

## STATE OF GEORGIA

| | |
|---|---|
| **HUGH GERALD DELAUGHDER, JR.** : | |
| **and PATSY ANN WHATLEY,** : | |
| **Individually and as Administratrix of the** : | **CIVIL ACTION FILE** |
| **Estate of BILL MONROE WHATLEY,** : | **NO.:** _____ |
| **deceased,** : | |
| : | |
| **Plaintiffs,** : | |
| : | |
| **v.** : | **JURY TRIAL DEMANDED** |
| : | |
| **COLONIAL PIPELINE COMPANY and** : | |
| **SUPERIOR LAND DESIGNS, LLC,** : | |
| : | |
| **Defendants.** : | |

## PLAINTIFFS' FIRST CONTINUING REQUESTS FOR PRODUCTION TO DEFENDANT COLONIAL PIPELINE COMPANY

COME NOW the Plaintiffs, Hugh Gerald Delaughder, Jr. and Patsy Ann Whatley,

Individually and as Administratrix of the Estate of Bill Monroe Whatley, deceased, and hereby

propound the following Requests for Production to Defendant Colonial Pipeline Company, to be

answered in the time allowed by the Georgia Rules of Civil Procedure:

## A. PRELIMINARY STATEMENT

1.    When responding to these requests, you are requested to furnish copies of all documents
available to you, including documents in the possession of your attorneys, investigators,
directors, employees, agents, representatives, experts, or any other person acting on your
behalf, and not merely documents in your personal possession.

2.    Each subpart of a request is intended to be responded to with the same force and effect as
if it were the subject of a separate request.

3.    In producing the requested documents, you are requested to furnish copies of all documents
in your possession, custody, or control, including documents in the possession of your
attorneys, or other persons directly or indirectly employed, consulted, or retained by you,
or connected with you or your attorneys, or anyone else acting on your behalf, or otherwise
subject to your control.

4.  The requested documents shall be produced as they are kept in the usual course of business, or shall be organized and labeled to correspond with the categories requested.

5.  If you decline to produce any document called for by these requests on the grounds that such documents are privileged, please produce a Privilege Log, which states with respect to each such document:

    a.  The name of the document (e.g., correspondence, memorandum, etc.);
    b.  The name, address, occupation, and position of the person who prepared the document;
    c.  The name, address, occupation, and position of the person to whom the document was addressed or for whom it was prepared;
    d.  The date on the document and, if different, the date the document was prepared;
    e.  The general subject matter to which the document relates;
    f.  The facts upon which you base your claim of privilege; and
    g.  The basis on which the privilege is claimed.

6.  If you object or refuse to produce documents called for by a part of a request, please produce all documents which are responsive to the remainder of the request.

7.  If you are unable to fully and completely respond to any request, please explain the reasons why you are unable to do so and respond to any remaining portion of the request to the extent possible.

8.  Production of Electronically Stored Data/Information.  All electronically stored information responsive to any request for production contained herein should be produced in their NATIVE FORMAT along with their associated METADATA intact.  NATIVE FORMAT or NATIVE FILE means electronically stored information in the electronic format of the application in which the file/bit-stream in normally created, viewed, and/or modified.  METADATA means: (1) information embedded in a NATIVE FILE that is not ordinarily viewable or printable from the application that generated, edited, or modified such NATIVE FILE, and (2) information generated automatically by the operation of a computer or other information technology system when a NATIVE FILE is created, modified, transmitted, deleted or otherwise manipulated by a user of such system.  If you object to providing electronically stored information in this format, notify counsel for Plaintiffs immediately so that the parties can meet and confer prior to the production of any electronically stored information.

### B. DEFINITIONS

1.  Colonial Pipeline Company shall hereinafter interchangeably be referred to as "YOU," "Colonial," "Colonial Pipeline," or "Colonial Pipeline Company."

2.  Superior Land Designs, LLC shall hereinafter interchangeably be referred to as "Superior," "Superior Land," or "Superior Land Designs."

2

3. The term "subject Colonial Line #1" shall refer to the subject Colonial Pipeline Line One.

4. The term "subject Colonial Line #1 pipeline accident" shall refer to the rupture of the subject Colonial Line #1 and explosion which occurred in Shelby County, Alabama, on October 31, 2016.

5. The term "September 9, 2016 Colonial Line #1 failure incident" shall refer to the Colonial Line #1 pipeline failure and gasoline leakage event which occurred in Shelby County, Alabama, on September 9, 2016.

6. The term "subject Colonial Line #1 pipe ruptured segment" shall refer to the segment of pipe containing the rupture which occurred on October 31, 2016, to include one mile of pipeline west of the "subject Colonial Line #1 pipeline accident" site through one mile east of the "September 9, 2016 Colonial Line #1 failure incident" site.

7. The term "June 26, 1996 Colonial Line #2 failure incident" shall refer to the Colonial Line #2 pipeline failure and leakage event which occurred in Fork Shoals, South Carolina, on June 26, 1996.

8. L.E. Bell Construction Company shall hereinafter interchangeably be referred to as "L.E. Bell," "L.E. Bell Construction" or "L.E. Bell Construction Company."

9. The term "document" includes any statement, written or recorded; paper; writing; letter; memorandum; report; log book; note; article; magazine; journal; journal article; newsletter; blueprint; transparency; drawing; design; sketch; book; textbook; brochure; laboratory record; audio or video tape; record; recording; photograph; negative; disk; or any other object containing a written, printed, spoken, electronic or photographic image, record or sound.

10. Requests concerning documents or test data and test reports shall include, but not be limited to, materials produced by Defendant's(s') employees, corporate research centers, outside contractors, suppliers, overseas affiliates or persons, agencies, universities, or companies funded all or in part by Defendant(s).

11. "Identify," and "Identity," when referring to a person, shall include:

   a. His or her name;
   b. Address at the time referred to;
   c. Present or last known address;

3

d.      Employer at the time referred to;

e.      Employer's address at the time referred to;

f.      Present employer and employer's address; and

g.      Position, title, and responsibilities at the time referred to and to the present and most recent position, title, and responsibilities.

"Identify," and "Identity," when referring to a company or subcontractor, shall include:

a.      The name of the entity at the time referred to;

b.      Current name;

c.      Present address; and

d.      Identity of highest ranking contact(s) within the outside entity with whom Defendant(s) communicated on a regular basis.

## C. REQUESTS

RFP 1:   Please produce: (1) any and all documents related to, pertaining to, evidencing, or containing the information contained in your responses to Plaintiffs' interrogatories; (2) any and all documents which were consulted or relied upon in forming your responses to Plaintiffs' interrogatories; and (3) any and all documents which are otherwise responsive to Plaintiffs' interrogatories.

RFP 2:   Please produce a diagram, schematic, corporate tree, or any other documents showing the corporate hierarchy of Colonial Pipeline Company from January 1, 2000 to the present. This request includes any documents showing parent entities and subsidiaries, as well as the internal hierarchy, including any divisions, departments, officers, and individuals within the hierarchy.

RFP 3:   Please produce a diagram, schematic, corporate tree, or any other documents showing the hierarchy of authority/responsibility within Colonial Pipeline Company for the work underway at the time of the **subject Colonial Line #1 pipeline accident**.

RFP 4:   Please produce any and all documents identifying Colonial Pipeline Company as the owner and/or operator of the **subject Colonial Line #1 pipe ruptured segment**.

RFP 5:   Please produce any and all documents regarding, related to, pertaining to, and/or created as a result of any investigation into the **subject Colonial Line #1 pipeline accident**, including but not limited to any investigation by: (1) YOU, Colonial Pipeline Company, (2) L.E. Bell Construction Company, (3) Superior Land Designs, LLC, (4) the NTSB, (5) PHMSA, (6) OSHA, (7) the EPA, and/or (8) any other local, state or federal government agency. This request for production extends to, but is not limited to: (1) any and all accident and/or investigation reports or forms, including any drafts, (2) any and all documents related to testing performed as part of any investigation, (3) any correspondence, emails, faxes, telephone messages, memoranda, or other communications between, to, and/or from any of the entities listed above regarding any investigation into the **subject Colonial Line #1 pipeline accident**, (4) any photographs, imaging, drawings, videos, diagrams, 3D scans, topographical scans,

reconstructions or other depictions created during the investigation which show or depict the scene, the plaintiffs, or other objects, (5) any written or electronically recorded witness statements, affidavits, or other like materials created in the course of any investigation, (6) any hazard analyses, risk assessments, root cause analyses performed as part of any investigation, and (7) any documents provided to any of the entities listed above as part of the investigation.

RFP 6:   If not produced in response to the immediately preceding request, please produce any and all documents regarding, related to, pertaining to, and/or created as a result of the **subject Colonial Line #1 pipeline accident**. This request for production extends to, but is not limited to: (1) any and all documents related to testing performed as part of any investigation, (2) any correspondence, emails, faxes, telephone messages, memoranda, or other communications regarding the **subject Colonial Line #1 pipeline accident**, including any internal communications; (3) any photographs, drawings, videos, diagrams, reconstructions or other depictions of the scene, the plaintiffs, or other objects concerning or related to the **subject Colonial Line #1 pipeline accident**, (4) any written or electronically recorded witness statements, affidavits, or other like materials, (5) any hazard analyses, risk assessments, root cause analyses related to the **subject Colonial Line #1 pipeline accident**, (6) any documents between, to, or from YOU, LE Bell Construction Company, Superior Land Designs, the NTSB, PHMSA, OSHA, the EPA and/or any other local, state or federal government agency regarding the **subject Colonial Line #1 pipeline accident.**

RFP 7:   Please produce all documents identifying specifically how the **subject Colonial Line #1 pipe ruptured segment** was secured, barricaded, excised and removed after the **subject Colonial Line #1 pipeline accident.**

RFP 8:   Please provide all photo documentation and all other documentation of the **subject Colonial Line #1 pipe ruptured segment** after the **subject Colonial Line #1 pipeline accident** that documents any pipeline movement, burial, barricading or alteration.

RFP 9:   Please produce all documents, photographs, videos, or other depictions of any aerial or ground patrols of the **subject Colonial Line #1 pipe ruptured segment** performed prior to and after the **subject Colonial Line #1 pipeline accident.**

RFP 10:   Please produce any and all documents regarding, related to, pertaining to, and/or created as a result of any fines, censures, reprimands or findings of violations of any state, federal or local law, regulation or code as a result of the **subject Colonial Line #1 pipeline accident**. This includes, but is not limited to, any documents related to: (1) any fines, censures, etc. by the NTSB, PHMSA, OHSA, the EPA, or ADEM; and (2) the to the OSHA fines issued to L.E. Bell Construction Company related to the **subject Colonial Line #1 pipeline accident.**

RFP 11:   Please produce all PHMSA Corrective Action Order Documentation reports related to: (1) the **subject Colonial Line #1 pipeline accident**, and/or (2) the **September 9, 2016 Colonial Line #1 failure incident.**

5

RFP 12:    Please produce any news reports or other media reports in your possession regarding : (1) the **subject Colonial Line #1 pipeline accident**, and/or (2) the **September 9, 2016 Colonial Line #1 failure incident**.  This request includes any articles, print media, internet reports, and/or videos.

RFP 13:    Please produce any and all documents identifying: (1) the product flowing in the **subject Colonial Line #1** at the time of the **subject Colonial Line #1 pipeline accident**, (2) the Maximum Operating Pressure ("MOP") of the **subject Colonial Line #1 pipe ruptured segment** before and after the **subject Colonial Line #1 pipeline accident**, and , (3) the actual pressure of the **subject Colonial Line #1 pipe ruptured segment** at the time of the **subject Colonial Line #1 pipeline accident**, and for the six months preceding the accident; and (4) the amount of product lost as a result of the **subject Colonial Line #1 pipeline accident**.

RFP 14:    Please produce any and all documents identifying: (1) who owned the **subject Colonial Line #1 pipe ruptured segment** at the time of the **subject Colonial Line #1 pipeline accident**, and (2) who owned Colonial Pipeline Company, both at the time of the **subject Colonial Line #1 pipeline accident** and for all times since the accident.

RFP 15:    For October 31, 2016, please produce all documents associated with, regarding, related to, and/or pertaining to any and all pipeline repair tasks for the L.E. Bell crew that was present at the time of the **subject Colonial Line #1 pipeline accident**, including but not limited to: (1) any work performed prior to the **subject Colonial Line #1 pipeline accident**, (2) the work underway at the time of the **subject Colonial Line #1 pipeline accident**, and (3) any work to be performed later on October 31, 2016.  This request includes, but is not limited to: (1) job hazard/safety analyses, (2) instructions, (3) drawings or schematics, (4) work orders, (5) job plans/scopes, (6) communications and/or documents exchanged between Colonial, LE Bell, Superior, and/or any other individual or entity related to or regarding said pipeline repair tasks, (7) work permits, (6) safety checklists, (8) work area inspection documentation, (9) assignment sheets, (10) applicable policies and/or procedures, (11) digging plans, (12) pink sheets, and (13) surveys or inspection reports.

RFP 16:    Please produce all documents, personnel files, job descriptions, training, operator qualification, and certification documents for any and all individuals: (1) working with or assigned to the L.E. Bell crew performing work at the time of the **subject Colonial Line #1 pipeline accident**; and/or (2) was present at the time of the **subject Colonial Line #1 pipeline accident**.  This request includes, but is not limited to, documents, personnel files, job descriptions, training, and certification documents as of October 31, 2016 and through the present for: (1) Nikki Cobb and other Colonial Inspectors or personnel, (2) the Superior Land Designs Inspector, and (3) the individual members of the LE Bell crew.

RFP 17:    Please produce all documents associated with, regarding, related to, and/or pertaining any digs along the **subject Colonial Line #1** pipeline in the five years preceding the **subject Colonial Line #1 pipeline accident**.

RFP 18:   Please produce Inspection #1188351 Superior Land Designs, LLC.

RFP 19:   Please produce the Service Record(s) for excavator 1 and excavator 2.

RFP 20:   Please produce any and all documents, including warnings, provided to any contractors (including LE Bell and/or Superior or their personnel) prior to the **subject Colonial Line #1 pipeline accident** concerning: (1) the **subject Colonial Line #1**, (2) the **subject Colonial Line #1 pipe ruptured segment**, (3) any work to be performed on the **subject Colonial Line #1 at the subject Colonial Line #1 pipe ruptured segment**.

RFP 21:   Please produce all documents related to any warning signs, barricades, and alerts being used or placed at or near the **subject Colonial Line #1 pipe ruptured segment** before and after the **subject Colonial Line #1 pipeline accident**. This requests includes, but is not limited to, any photographs documenting such warning signs, barricades, and alerts.

RFP 22:   Please produce all documents related to any above-ground markers at the scene of the **subject Colonial Line #1 pipe ruptured segment** to identify pipeline components underground, whether used before or after the **subject Colonial Line #1 pipeline accident**.

RFP 23:   Please produce all job safety analysis or job hazard analysis documents related to any repairs or work performed on the **subject Colonial Line #1 at the subject Colonial Line #1 pipe ruptured segment** prior to the rupture.

RFP 24:   Please produce any and all contracts regarding, pertaining to, or applicable to the work being performed at the **subject Colonial Line #1 pipeline accident** site on October 31, 2016. This includes, but is not limited to: (1) any contracts between Colonial Pipeline, Superior Land Designs, and/or LE Bell, and (2) any contracts for any individuals who were present or had responsibility for said work.

RFP 25:   Please produce any and all drawings, maps and records as required by 49 C.F.R. 195.404, schematics, specifications, alignment charts and design documents for the **subject Colonial Line #1 at the subject Colonial Line #1 pipe ruptured segment**. This request includes, but is not limited to: (1) all engineering and/or isometric drawings of the completed **subject Colonial Line #1 pipe ruptured segment** construction, to include the as-planned, as-constructed and as-repaired condition; (2) full-sized, legible engineering drawings for the pipe sections used to construct the **subject Colonial Line #1 at the subject Colonial Line #1 pipe ruptured segment**; (3) full-sized, legible welding drawings and diagrams for the pipe sections used to construct the **subject Colonial Line #1 at the subject Colonial Line #1 pipe ruptured segment**; (4) all engineering change requests, engineering change orders, and any other drawing changes  for the engineering and welding drawings for the **subject Colonial Line #1 at the subject Colonial Line #1 pipe ruptured segment**; (5) all Piping and Instrumentation Diagrams ("P&ID") for the **subject Colonial Line #1 pipe ruptured segment**; (6) all Colonial Pipeline line charts/alignment charts; (7) all materials,

fabrication, inspection and quality specifications for the pipe sections used to construct the **subject Colonial Line #1 at the subject Colonial Line #1 pipe ruptured segment**.

RFP 26: Please produce all documents related to the installation of the **subject Colonial Line #1 pipe ruptured segment**, including work orders, engineering drawings, schematics, purchase orders and invoicing. This includes any documents which identify any individual or entity involved in any such installation activity.

RFP 27: Please produce all documents associated with the purchase, installation, inspection, maintenance, and repair of any and all threaded O-ring fittings on the **subject Colonial Line #1 pipe ruptured segment**.

RFP 28: Please produce all documents related to any pipeline repairs, modifications, alterations, component replacements, or installations of hardware, fittings, or other appurtenances of the **subject Colonial Line #1 pipe ruptured segment**, both before and after the **subject Colonial Line #1 pipeline accident**. This request specifically includes, but is not limited to: (1) documents related to the installation of any non-pipe materials such as sleeves and concrete pads/slabs, (2) documents identifying any individuals or entities involved in making such repairs, modifications, alterations, component replacements, or installations, and (3) any repair reports.

RFP 29: Please produce any and all documents which identify:

　　　1.　　The manufacturer of any components of the pipe sections in the **subject Colonial Line #1 pipe ruptured segment**, including any fittings or other hardware.
　　　2.　　Any contractor that performed work on or at the **subject Colonial Line #1 pipe ruptured segment**, including but not limited to excavation, welding, or pipe coating.

RFP 30: Please produce the welding procedure specifications for the pipe sections used to construct the **subject Colonial Line #1 at the subject Colonial Line #1 pipe ruptured segment**.

RFP 31: Please produce all materials, fabrication, inspection and quality specifications for the coating system on pipe sections used to construct the **subject Colonial Line #1 at the subject Colonial Line #1 pipe ruptured segment**.

RFP 32: Please produce all weld quality inspection procedures and weld inspection documents for the pipe sections used to construct the **subject Colonial Line #1 at the subject Colonial Line #1 pipe ruptured segment**.

RFP 33:  Please produce all purchase documents, bills of materials or parts listings for the subject **Colonial Line #1** construction used to construct the **subject Colonial Line #1 at the subject Colonial Line #1 pipe ruptured segment**.

RFP34:  Please produce all documents identifying the material properties of the **subject Colonial Line #1** material, including tensile strength requirements, yield strength requirements and dimensions to include nominal diameter and wall thickness, coating thickness and weight.

RFP 35:  Please produce all documents identifying the American Society of Mechanical Engineers ("ASME") and American Petroleum Institute ("API") classification/specification, pipe grade and class, product specification level, process of manufacture, heat treatment, and test pressures and coating for the **subject Colonial Line #1 at the subject Colonial Line #1 pipe ruptured segment**.

RFP 36:  Please produce all documents identifying the chemical composition of the **subject Colonial Line #1 at the subject Colonial Line #1 pipe ruptured segment** before and after the **subject Colonial Line #1 pipeline accident**.

RFP 37:  Please produce all documentation of any weld repairs performed on the **subject Colonial Line #1 pipe ruptured segment**.

RFP 38:  Please produce all documentation of all material and mechanical specifications and certifications associated with hardware, including fittings and valves, used on the **subject Colonial Line #1 pipe ruptured segment**.

RFP 39:  Please produce all documents identifying: (1) the specified depth of the **subject Colonial Line #1 pipe ruptured segment** prior to the **subject Colonial Line #1 pipeline accident**, and (2) the actual depth.

RFP 40:  Please produce any and all documents regarding, related to, pertaining to, or created as a result of any inspection, testing, or monitoring of **the subject Colonial Line #1 pipe ruptured segment** before and after the subject Colonial Line #1 pipeline accident. This request includes, but is not limited to: (1) any direct assessment, inline inspection, hydrostatic testing and any other documents related to pipeline integrity; (2) cathodic protection surveys, monitoring, data, and any other documents related to cathodic protection; (3) mechanical test documents and data; (4) chemical analysis documents and data; (5) condition assessment data; (6) photo and video documentation; (7) all computerized monitoring data; (8) all Smart Pig condition assessment data, photo documentation, and video documentation; (9) all Deformation Pig condition assessment data, photo documentation, and video documentation; (10) all Elastic Wave Tool data; (11) all data, photo documentation and video documentation related to the presence of any and all dents; (12) all Colonial inspection reports; (13) all leak detection tests; (14) hydrostatic pressure tests, ultrasound inspections, in-line inspections, and data associated with local leak detection, including Smart Pig devices;

(14) all surface inspections performed by any method; (15) all weld inspections performed by any method; (16) all corrosion control records; and (17) any risk or hazard assessments.

RFP 41: Please produce Colonial Pipeline Company's Pipeline Integrity Management Plan documents for the **subject Colonial Line #1,** to include all plan revisions from October 2011 through May 2018.

RFP 42: Please produce any documents regarding, related to, or pertaining to: (1) any proposed or planned work or projects for **the subject Colonial Line #1 pipe ruptured segment,** including any work which was proposed or planned before the **subject Colonial Line #1 pipeline accident,** (2) any prioritization or ranking for proposed or planned work for **Colonial Line #1.**

RFP 43: Please produce all policies and procedures relevant or applicable to excavations of the **Colonial Line #1,** including any and all versions of the following policies and procedure documents:

1. Colonial Pipeline Company Maintenance Manual or equivalent.
2. Colonial Pipeline Company Conduct of Operations Manual or equivalent.
3. Colonial Pipeline Company Operational and Maintenance Procedures or equivalent.
4. Colonial Pipeline Company Installation Procedure Manual or equivalent.
5. Colonial Pipeline Company Inspection Procedure Manual or equivalent. ˙
6. Colonial Pipeline Company's Excavation and Backfill Procedure MP-01-001 Rev 5 or equivalent.
7. Colonial Pipeline Company's emergency action plan prior to and after the subject Colonial Line #1 pipeline accident or equivalent.
8. L.E. Bell Construction's emergency action plan prior to and after the subject Colonial Line #1 pipeline accident.
9. Any specification for clearing, locating line, and ditching and excavation.
10. Colonial Pipeline's Excavation Checklist or equivalent.
11. Colonial Pipeline's Pipe Policy or equivalent.
12. L.E. Bell Construction's Excavation Policy or equivalent.
13. the Contractor's Safety Plan.
14. the "Trenching and Excavation" Colonial Pipeline Company Excavation and Backfill Maintenance Procedure MP-01-001 Rev 3 or equivalent.
15. Colonial Pipeline's Safety Awareness Manual or equivalent.
16. Colonial Pipeline's Excavation and Backfill Procedure CM-102 Rev 2 or equivalent.
17. Colonial Pipeline's Contractor Safety Program or equivalent.
18. Contractor Pipeline Maintenance 1 or equivalent.
19. Any policy or procedure regarding above-ground marking of TORs or other appurtenances or fittings.
20. Any policy or procedure for handling abnormal operating conditions.

|      |                                                                                                     |
|------|-----------------------------------------------------------------------------------------------------|
| 21.  | Any policy or procedure required by any local, state, or federal law or regulation, including 49 C.F.R. 195.402. |
| 22.  | Any policy or procedure regarding language requirements for agents/servants/employees or contractors. |

RFP 44:  Please produce documents identifying any and all relevant or applicable industry standards or recommended practices covering the **subject Colonial Line #1**, including but not limited to any API specifications/ recommended practices and ASME codes/standards.

RFP 45:  Please produce all documents regarding OQ's required by Colonial Pipeline, as well as the following:

|      |                                                                                                     |
|------|-----------------------------------------------------------------------------------------------------|
| 1.   | the Training Operation Qualification (OQ) – Colonial Pipeline Safety Training Video. |
| 2.   | the National Center for Construction Education and Research (NCCER) NCCER-62107-02 Excavating and Backfilling (Covered Task (CT) CT 17,39,32). |
| 3.   | NCCER 62107-02 Install, Inspect, and Maintain Temporary Marker. |
| 4.   | NCCER 62107-02 Observation of Excavation Activities. |
| 5.   | the Intermediate Operator List of Key Responsibilities. |
| 6.   | the Laborer List of Key Responsibilities. |
| 7.   | the Spotter/Swamper List of Key Responsibilities. |
| 8.   | OQ 14, 28, 605 (Clearing Job Safety Analysis (JSA)). |
| 9.   | OQ 14 (Locate Line JSA). |
| 10.  | OQ 15, 17, 32, 39, 404, 405, 607 (Ditching/Excavation JSA). |
| 11.  | ROW-IP-01 – Line Location and Row Limits. |
| 12.  | ES-05-103 – Trenches and Underground Lines. |
| 13.  | the OQ for Abnormal Operating Conditions. |
| 14.  | the 24 Hour Hazardous Material Technician Training. |
| 15.  | Any continuing training program documents required by 49 C.F.R. 195.403. |

RFP 50:  Please produce all documents related to the **September 9, 2016 Colonial Line #1 failure incident**, including but not limited to any reports, correspondence, or documents exchanged between YOU, the NTSB, PHMSA, OSHA, EPA and any other local, state or federal government agency.

RFP 51:  Please produce all documents indicating or showing the geographic location, the physical location, and the proximity between: (1) the **subject Colonial Line #1 pipeline accident**, and (2) the **September 9, 2016 Colonial Line #1 failure incident**.

RFP 52:  Please produce all Colonial pipeline reports related to the **September 9, 2016 Colonial Line #1 failure incident** in Shelby County, Alabama, whether prepared by Colonial or by a contractor to Colonial.

RFP 53:    Please produce all Colonial Pipeline Company Corrective Action Order Documentation reports related to the **September 9, 2016 Colonial Line #1 failure incident** in Shelby County, Alabama.

RFP 54:    Please produce all Colonial Pipeline Company Root Cause Failure Analysis reports related to the **September 9, 2016 Colonial Line #1 failure incident** in Shelby County, Alabama.

RFP 55:    Please produce all photo documentation and video documentation in Colonial Pipeline Company's possession related to the **September 9, 2016 Colonial Line #1 failure incident** in Shelby County, Alabama.

RFP 56:    Please produce all documents associated with the **September 9, 2016 Colonial Line #1 failure incident** product leak, including investigations of the pipeline incident, documentation of Colonial Line #1 condition where the leak was discovered, inspections/ examinations/assessments performed on **Colonial Line** #1 in the area of the leak, and material testing and laboratory analysis performed on **Colonial Line #1** material as a result of the **September 9, 2016 Colonial pipeline Line #1 failure incident** in Shelby County, Alabama.

RFP 57:    Please produce all documents regarding, related to, pertaining to, or created as a result of any work done at or near (within one mile in either direction) the location of the **September 9, 2016 Colonial Line #1 failure**, including but not limited to any repair work, inspections, or re-coating projects.

RFP 58:    Please produce any and all documents provided to PHMSA pursuant to any corrective action order related to the **September 9, 2016 Colonial Line #1 failure**.

RFP 59:    Please produce any and all documents regarding, related to, or pertaining to any accidents, incidents, or occasions where any of Colonial Pipeline's pipelines or facilities (including but not limited to Colonial Line #1 and Line #2) were struck by excavation equipment of any type. This request includes, but is not limited to: (1) Colonial pipeline accident/incident reports; (2) any documents provided to or made part of any investigation by YOU, the NTSB, PHMSA, OSHA, the EPA and/or any other local, state or federal government agency; (3) any documents which describe or provide details regarding the accident, incident, or occasion, including any individuals or entities involved and the cause; and (4) any documents which list or summarize such accidents, incidents, or occasions.

RFP 60:    Please produce any and all documents regarding, related to, or pertaining to any accidents, incidents, or occasions where any of Colonial Pipeline's pipelines or facilities (including but not limited to Colonial Line #1 and Line #2) failed or ruptured, including but not limited to any failure or rupture at a pipeline threaded O-ring fitting. This request includes, but is not limited to: (1) Colonial pipeline accident/incident/failure reports; (2) any documents provided to or made part of any

12

investigation by the NTSB, PHMSA, OSHA, the EPA and/or any other local, state or federal government agency; (3) any documents which describe or summarize the cause of any failure or rupture, including any individuals or entities involved; (4) any documents detailing the date, location, cause, barrels of product released, and/or total cost of the accident/incident; and (5) any documents which list or summarize such failures or ruptures.

RFP 61:   Please produce any and all documents regarding, related to, or pertaining to any Colonial pipeline failures in (1) Fork Shoals, South Carolina, (2) Kannapolis, North Carolina, (3) Chattanooga, Tennessee, (4) Pelham, Alabama, (5) Centreville, Alabama, (6) Dacula, Georgia, (7) Huntersville, North Carolina, (8) Baton Rouge, Louisiana, and (9) Bremen, Georgia.

RFP 62:   Please produce all federal EPA violations issued to Colonial Pipeline Company from January 2000 forward.

RFP 63:   Please produce OSHA 300 logs for year-to-date 2018, 2017, 2016, 2015, 2014 and 2013.

RFP 64:   Please produce OSHA 300 summaries for 2017, 2016, 2015, 2014 and 2013.

RFP 65:   Please produce any and all documents regarding, related to, or pertaining to any accidents, incidents, or occasions where any of Colonial Pipeline's contractors (or their agents/servants/employees) failed to adhere to Colonial Pipelines policies and procedures. This request includes any investigations, reports, or complaint documents.

RFP 66:   Please produce: (1) any and all warnings or findings of probable cause issued to you pursuant to 49 C.F.R. 190.205, and any related documents; (2) any and all notices of probable violations issued to you pursuant to 49 C.F.R. 190.207, and any related documents; (3) any and all final orders issued to you pursuant to 49 C.F.R. 190.213, and any related documents; (4) any and all emergency orders issued to you pursuant to 49 C.F.R. 190.236, and any related documents; (5) any and all safety orders issued to you pursuant to 49 C.F.R. 190.239, and any related documents; (6) any and all compliance orders issued to you pursuant to 49 C.F.R. 190.217, and any related documents; (7) any and all consent orders issued to you pursuant to 49 C.F.R. 190.219, and any related documents; and (8) any and all corrective action orders issued to you pursuant to 49 C.F.R. 190.233, and any related documents.

RFP 67:   Please produce any documents regarding, related to, or pertaining to any civil penalties pursuant to 49 C.F.R. 190.221.

RFP 68:   Please produce any documents regarding, related to, or pertaining to any prior claims, lawsuits, or settlements for personal injury or property damage: (1) arising out of any alleged failure of Colonial Pipeline or its contractors; (2) arising out of any leak, release or pipeline failure.

13

RFP 69:    Please produce copies (including but not limited to declarations pages) of any policies or agreements of insurance, including any primary and excess policies, which may be called upon to satisfy all or part of any judgment against you in this action.

RFP 70:    Please produce copies of any statements obtained from any plaintiff or family member of a plaintiff.

RFP 71:    Please produce copies (including but not limited to declarations pages) of any policies or agreements of insurance, including any primary and excess policies, which may be called upon to satisfy all or part of any judgment against you in this action.

RFP 72:    Please produce copies of any contracts or agreements regarding the assignment of any policies of insurance which may be called upon to satisfy all or part of any judgment in this action, including any judgment against YOU or Superior Land Designs.

RFP 73:    Please produce any copies of any joint defense agreements regarding or related to this action or any other matter related to the **subject Colonial Line #1 pipeline accident.**

RFP 74:    Please produce copies of any statements obtained from any plaintiff or family member of a plaintiff.

RFP 75:    Please produce any DOCUMENTS regarding, related to, pertaining to any phone calls, text messages, communications, or conversations from October 31, 2016 regarding: (1) the **subject Colonial Line #1 pipeline accident**, (2) the **subject Colonial Line #1 pipe ruptured segment**, or (3) the work to be performed at the site of the **subject Colonial Line #1 pipeline accident**. This request includes, but is not limited to, any phone records, recordings, emails, transcripts, or text messages.

This 9th day of July, 2018.

Respectfully submitted,

By: */s/ Travis E. Lynch*
Travis E. Lynch, GA Bar No. 162373
tlynch@hgdlawfirm.com
HENINGER GARRISON DAVIS, LLC
3621 Vinings Slope, Suite 4320
Atlanta, GA 30339
Tel: 404-996-0867
Fax: 205-326-3332


*/S/ GLENDA G. COCHRAN*
Glenda G. Cochran, PHV forthcoming
GC@GLENDACOCHRAN.COM
Matthew Robert Moneyham, PHV forthcoming
MM@glendacochran.com

14

GLENDA COCHRAN ASSOCIATES
310 Richard Arrington Jr. Blvd. North,
Suite 500
Birmingham, Alabama 35203
Telephone: (205) 328-5050
Facsimile:   (205) 320-1659

**ATTORNEYS FOR PLAINTIFFS**